IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POQUELIN, S.A. DE C.V., <br><br> *Plaintiff,* <br><br> v. <br><br> MTV NETWORKS LATIN AMERICA, INC., <br><br> *Defendant.* | Case No. 1:23-cv-01922 <br><br> **COMPLAINT** |

VANESSA DESTIME
EISNER LLP
152 W 57th Street
48th Floor
New York, New York 10019
Telephone: (646) 876.2600
Email:  vdestime@eisnerlaw.com

JEREMIAH REYNOLDS
EISNER LLP
9601 Wilshire,
7th Floor,
Beverly Hills, CA 902110
Telephone: (310) 855.3200
Email:  jreynolds@eisnerlaw.com
Applying Pro Hac Vice Application to be Submitted

*Attorneys for Plaintiff Poquelin S.A. DE C.V.*

# INTRODUCTION

1. Plaintiff Poquelin, S.A. DE C.V. ("Poquelin") is a Mexico based production company headed by its principal, Fernando Kalife, a noted director, screenwriter, and producer. Poquelin is the owner and producer of the documentary series "Mexico: Campeon del Mundo" (the "Series"). The Series is a documentary series that chronicles Mexico's soccer team's historical, cultural, and psychological journey to the World Cup.

2. Defendant MTV Networks Latin America, Inc. (hereinafter "MTVNLA") owns and operates television channels in Latin America under the brand name MTV and Nickelodeon Latin America and streaming services Paramount+ and Pluto TV. It is based in Miami, Florida and is a subsidiary of the massive media conglomerate, Paramount Global.

3. On or around October 5, 2022, Poquelin and MTVNLA entered into a written license agreement (hereinafter the "License Agreement"), wherein MTVNLA licensed the valuable right to distribute the Series in Latin America for a period of three years in exchange for, *inter alia,* a license fee of $250,000.[1] The Series was well-positioned and ready to be released during the height of excitement and anticipation created by the 2022 FIFA World Cup in Qatar, which took place from Nov 20, 2022 to Dec 18, 2022, and included the participation of the Mexican national soccer team.

4. But MTVNLA's contractual breaches and bad-faith conduct destroyed Poquelin's unique opportunity to release the Series that it worked so hard to create during the height of the World Cup excitement. Specifically, on December 22, 2022, nearly six weeks after MTVNLA

---

[1] The License Agreement contains a confidentiality clause and is therefore not attached to this Complaint out of an abundance of caution. Upon filing, Poquelin will request that MTVNLA consent to the public filing of the License Agreement or will ask that MTVNLA move to lodge and file the document under seal.

should have made payment to Poquelin for the license fee and *after* the conclusion of the World Cup, MTVNLA illegally and improperly purported to terminate its License Agreement with Poquelin and refused to pay the $250,000 license fee that MTVNLA unambiguously owes under the License Agreement.

5. The purported basis for the "termination" is that MTVNLA received two unsubstantiated "takedown notices" from third-parties claiming to own a few minutes of content used in the 230-minute Series. Although Poquelin disputed and continues to dispute the validity of any assertions made in the takedown notices, it nonetheless immediately removed the extremely small amount of disputed content covered by the notices from the Series to prevent any potential claims and re-delivered the Series to MTVNLA.

6. But Poquelin's actions did nothing to convince MTVNLA to retract its termination of the License Agreement. MTVNLA already decided that it would try to exit the License Agreement. MTVNLA believed it could bully a small Mexican company into submission.

7. MTVNLA has miscalculated. Poquelin will not allow MTVNLA's bad faith, illegal conduct, and biased attitude towards a Mexican company go unchecked. Poquelin brings this case to seek justice from the United States courts and remedy MTVNLA's clear contractual breach.

**PARTIES**

8. Poquelin is a corporation that is incorporated in Mexico and has its principal place of business in Nuevo León, México.

9. MTVNLA is a corporation that is incorporated in Delaware and has its principal place of business in Miami, Florida.

## JURISDICTION AND VENUE

10. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). Poquelin and MTVNLA are citizens of different states and the amount in controversy exceeds $75,000. Specifically, Poquelin is a citizen of Mexico. MTVNLA is a citizen of Delaware and Florida for diversity purposes.

11. The Parties agreed that New York is the exclusive jurisdiction for any dispute arising out of the License Agreement. The Parties also agreed that New York is the exclusive venue to litigate any dispute arising out of the License Agreement.

## STATEMENT OF FACTS

12. On or around October 5, 2022, the Parties entered a License Agreement wherein MTVNLA licensed the right to distribute the Series in "the Territory" (comprised of Latin American countries) for a period of 36 months. MTVNLA agreed to pay Poquelin a total of $250,000 for the license. Payment of $62,500.00 of the license fee was due on or before 30 days after execution of contract – specifically November 7, 2022 – and the remaining $187,500.00 was due on or before 30 days after first payment and acceptance of delivery of materials – specifically, December 6, 2022.

13. Section 15.1 of the License Agreement provides the limited grounds upon which the License Agreement could be terminated for breach. It states:

> Either Party may terminate this Agreement upon written notice in the event that (i) the other party materially breaches this Agreement *and such breach is not substantially cured within thirty (30) days following written notice of such breach*; or (ii) the other party becomes the subject of a voluntary or involuntary petition in bankruptcy or any proceeding in any jurisdiction relating to

insolvency, receivership, liquidation or composition for the benefit
            of creditors that is not dismissed within sixty (60) days. In addition,
            if MTVNLA entirely discontinues operation of the Licensed
            Service, in whole or in part, MTVNLA shall be entitled to terminate
            this Agreement upon sixty (60) days' prior written notice to
            Programmer.

*Id.* at § 15.1 (emphasis added).

14. On or around October 23, 2022, Poquelin delivered to MTVNLA the materials specified in the License Agreement.

15. The first installment of the license fee payment, $62,500.00, should have been paid by MTVNLA on November 7, 2022, but the date came and went without any payment from MTVNLA.

16. Instead of paying on time, on or around November 16, 2022, MTVNLA notified Poquelin that the Mexican Football Federation ("MFF") had expressed concerns regarding whether certain footage in the Series was owed by MFF.

17. On or around November 19, 2022, Poquelin sent MTVNLA its licensing agreement with the Fédération Internationals de Football Association ("FIFA"), which Poquelin believed authorized use of the content at-issue.

18. On November 23, 2022, however, Poquelin notified MTVNLA that it would be removing the disputed footage because the disputed footage was only approximately three minutes in length and because Poquelin wanted to resolve any concerns by MTVNLA.

19. On November 28, 2022, despite Poquelin's prior notification that it had removed the disputed footage from the Series and re-delivered, newly edited episodes to MTVNLA, MTVNLA nonetheless sent Poquelin formal correspondence (the "Notice Letter") that the MFF sent MTVNLA a takedown notice of the Series.

20. In the Notice Letter, MTVNLA also notified Poquelin that Peermusic sent MTVNLA a takedown notice regarding music in a promotional trailer for the Series. MTVNLA requested that Poquelin provide MTVNLA any and all licenses related to the Series that may be owned by the MFF and all licenses related to the elements used in the Series' promotional trailer.

21. On November 28, 2022, Poquelin again reiterated that any disputed footage from MFF had been removed and replaced in the Series.

22. Poquelin requested that MTVNLA provide an actual copy of the takedown request from the MFF. Poquelin wanted to see an actual copy of the takedown request to evaluate its veracity because the MFF is a highly troubled organization with a documented history of corrupt conduct and had potential motivation to cause harm to Poquelin. Despite Poquelin's request for the takedown notice, MTVNLA never provided Poquelin with an actual copy of the takedown notice from MFF.

23. On November 29, 2022, Poquelin responded to MTVNLA with formal correspondence from Mr. Kalife, stating as follows:

> I am writing in response to your letter dated November 28th, regarding the two takedown notices received for the licensed series "Mexico: Campeon Del Mundo". These are in relation to approximately 3 minutes of archive footage claimed by the Mexican Football Federation ("MFF") out of the 230 minutes in total that compose the above mentioned series; and the song titled "Afuera", claimed by Peermusic Ltd., used in one the three trailers edited to promote the series. Both of these issues have been corrected with the master files delivered between November 25th and November 28th as explained in the following paragraphs.
>
> Regarding the claim from the MFF, theses images have been replaced after being informed of such claim by telephone call by Mariana Velazquez on November 20th. All these materials were substituted with archive film by our company and/or purchased by footage providers.

> Attached are the licenses, invoices and corresponding documents to back this, per the email sent to Mariana Velazquez and Giordi Valdivia on November 28th.
>
> With relation to the claim from Peermusic Ltd. to the song "Afuera", our company has paid the music synchronization license to use such song in the series per the invoice and wire transfer instructions from September 9th (both attached), having edited the trailer with segments from it.  However, to avoid further discussions and clear the claim as soon as possible, we have re-edited the trailer with a new song and replaced it in both Viacom's server and all of the websites and social media accounts that our company manages.
>
> Having corrected these issues, both MFF and Peermusic Ltd. should by no means maintain claims to takedown the series and/or trailer, as there is no footage and/or music used whatsoever that is under their ownership or rights control. Any pending and/or future claims to your company regarding the series "Mexico: Campeon del Mundo" should be directed to my firm, Poquelin S.A. de CV, per the Licensing Agreement signed between our companies on October 5th, 2022.
>
> We apologize for any inconveniences this might have caused. We look forward to seeing the series up again on Paramount+ and Pluto TV, please let us know if and how we can assist in the process to reestablish it.

24. The correspondence from Poquelin resolved any issues and disputes raised by the takedown notices.

25. Nonetheless, on November 30, 2022, MTVNLA notified Poquelin that it was still refusing to exhibit the Series on its channels or streaming services.

26. On December 1, 2022, Poquelin again reiterated that it had performed a comprehensive check of all footage and materials in the Series to make sure there would be no further takedown notices.

27. MTVNLA failed to pay the second installment of the license fee payment, $187,500.00, due on December 6, 2022.

28. Nonetheless, on December 7, 2022, Poquelin participated in good faith in a Zoom conference with MTVNLA wherein Poquelin again explained the measures it had taken to ensure that no further takedown notices would be sent.  Poquelin also provided a comprehensive spreadsheet to MTVNLA listing all of the content in the Series, time codes for each, source references and releases.

29. Despite all of Poquelin's good faith conduct and efforts, on December 22, 2022, however, MTVNLA notified Poquelin that MTVNLA had decided to unilaterally terminate the License Agreement (the "Termination Letter").

30. In the Termination Letter, MTVNLA explained that it would not broadcast the Series.

31. MTVNLA cited Section 8.2 of the License Agreement to support its termination. Section 8.2 states:

> As of the date of this Agreement, Grantor hereby represents and warrants that there are no pending third-party trademark applications, registrations, claims, actions or the like against any Series or any elements thereof. Grantor shall take all steps, at Grantor's expense, to protect all trademarks pertaining to the Series from infringement and Grantor agrees that it will institute such action and proceedings to prevent any unauthorized use, reproduction, exhibition or exploitation by third parties of any Series or any party thereof or the material on which the Series is based which may be in contravention of the rights granted to MTVNLA hereunder. If at any time during the License Period, MTVNLA's rights to any Series are limited in any way due to any third-party claim (including, without limitation, a claim based on a prior trademark registration) MTVNLA shall have the unilateral option to terminate this Agreement in whole or in part as to a particular Series, which right shall in no way limit MTVNLA's rights otherwise available to it, at law or in equity, for Grantor's breach of this Agreement.

*See* at § 8.2.

32. MTVNLA's failure to pay any portion of the license fee when due and election to unilaterally terminate the License Agreement on December 22, 2022 are clear breaches of the License Agreement.

33. First, MTVNLA has been granted "the exclusive right and license to exhibit, distribute, transmit, telecast and perform the Series on a Linear and Non-Linear Exhibition basis including SVOD and AVOD, in the Territory . . . ." None of these rights have been "limited" by the "takedown notices."

34. Second, there has been no adjudication that the takedown notices were proper or justified.

35. Third, even assuming the takedown notices were proper and/or justified, Poquelin removed and replaced the small amount of content at-issue. Poquelin did so even after providing MTVNLA proof that it lawfully obtained licenses to use the content at-issue.

36. On January 20, 2023, pursuant to Section 15 of the License Agreement, Poquelin provided formal notice of breach to MTVNLA and gave it an opportunity to cure its breach by paying the license fee.

37. On February 17 and 21, 2023, however, counsel for MTVNLA notified Poquelin that it would not pay the license fee and was proceeding with its termination of the License Agreement.

38. Poquelin now seeks adjudication from this Court that MTVNLA breached the License Agreement by unilaterally terminating the License Agreement without cause, as defined in Section 8 of the License Agreement, and without providing Poquelin the requisite opportunity

to cure any alleged breach of the License Agreement, as required by Section 15 of the License Agreement.

## COUNT I
### (Breach of Written Contract)

39. Poquelin incorporates by reference and repeats and realleges paragraphs 1 through 38 of this Complaint above as if fully set forth herein.

40. Poquelin and MTVNLA entered into the License Agreement on October 5, 2022.

41. Under the License Agreement, Poquelin licensed the Series to MTVNLA.

42. MTVNLA has failed to pay any portion of the license fee when due and improperly terminated the License Agreement

43. Poquelin has performed all conditions, covenants, and promises required of it under the License Agreement.

44. Poquelin seeks damages in the amount of $250,000 as a result of MTVNLA's breach.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Poquelin prays for judgment against MTVNLA as follows:

A. Finding that MTVNLA's unilateral termination of the License Agreement constitutes a breach of the License Agreement; and

B. An award of damages in the amount of $250,000 for MTVNLAs breach;

C. Awarding Poquelin prejudgment interest;

D. Awarding Poquelin all costs incurred in this action; and

E. Granting Poquelin any and all such further and other relief as this Court deems just and proper.

Dated: March 6, 2023           /s/ Vanessa Destime

VANESSA DESTIME
EISNER LLP
152 W 57th Street
48th Floor
New York, New York 10019
Telephone: (646) 876.2600
Email: vdestime@eisnerlaw.com

JEREMIAH REYNOLDS
EISNER, LLP
9601 Wilshire,
7th Floor,
Beverly Hills, CA 902110
Telephone: (310) 855.3200
Email: jreynolds@eisnerlaw.com
Pro Hac Vice Application to be Submitted